UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FLORIDALMA CHINCHILLA,<br><br>Petitioner,<br>v.<br><br>MARKWAYNE MULLIN, Secretary, U.S. Dept. of Homeland Security; TODD BLANCHE, U.S. Attorney General; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; JASON KNIGHT, Salt Lake City Field Office Director for Detention and Removal; DARIN BALAAM, Sherriff, Washoe County Detention Center,<br><br>Respondents. | Case No. 3:26-cv-00548-ART-CSD<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1) |

Petitioner Floridalma Chinchilla has been detained in ICE custody since July 14, 2026. (ECF No. 1 at 3.) She brings this habeas petition (ECF No. 1) to challenge her detention. The Court now GRANTS the petition for habeas corpus and orders Respondents to release Petitioner.

## I. Background

Petitioner is a native and citizen of Guatemala. (ECF No. 1 at 7.) She lives in Reno with her spouse and is the mother of three children, including two minors who are American citizens. (*Id.*)

According to the Petition, Petitioner has continuously resided in the United States since March 2007 and has lived in Reno for nearly two decades. (*Id.*) The Government provided her I-213 Form indicating that she was in the United States prior to 2007 but was arrested and deported to El Salvador in December 2006. (ECF Nos. 12 at 1-2, 12-2 at 3.) The Government claims that she never filed for permission to re-enter and therefore did so unlawfully when she returned in

March 2007. (ECF No. 12 at 1-2.)

The Petition states that in 2016, Petitioner's minor daughter was the victim of sexual assault. (ECF No. 1 at 7.) Petitioner reported the crime and cooperated with the Sparks Police Department's criminal investigation. (*Id.*)

On May 20, 2026, Petitioner was arrested by the Reno Police Department for driving under the influence. (ECF Nos. 1 at 7, 12 at 2.) On July 14, 2026, ICE took Petitioner into custody and entered a removal order against her. (*Id.*; ECF No. 12-3.) Three days later, on July 17, 2026, Petitioner submitted a Request for Stay of Removal pursuant to 8 U.S.C. § 1227(d)(1). (ECF No. 1 at 9.) That request remains pending. (*Id.*)

On June 4, 2026—between Petitioner's arrest in May and being taken into ICE custody in July—the Sparks PD executed and certified a Form I-918, Supplement B, on her behalf. (*Id.* at 7.) This document verifies that Petitioner assisted law enforcement with an investigation of specified criminal activity, making her eligible to petition for a U-1 nonimmigrant visa ("U-Visa"). (*Id.*) As detailed below, U-Visas provide benefits and protections to noncitizen victims—and, in circumstances relevant here, derivative benefits to those victims' parents—of domestic violence, trafficking, and other crimes. 8 U.S.C. § 1101(a)(15)(U)(i). On July 15, 2026, the day after being taken into ICE custody, Petitioner filed a completed Form I-918 petition for a U-Visa. (ECF Nos. 13 at 3; 13-1.) This application also remains pending. (ECF No. 1 at 7.)

Finally, on July 17, 2026, Petitioner also filed this Petition and a TRO motion. (ECF Nos. 1, 2.) The Court granted the TRO in part and ordered Respondents not to transfer or remove Petitioner until further action on the Petition. (ECF Nos. 3, 4.) Before the Court now is Petitioner's petition for writ of habeas corpus, alleging that her ongoing detention is in violation of ICE's own governing policies, the Administrative Procedure Act (APA), and the Fifth Amendment's Due Process Clause. (ECF No. 1 at 2-3.)

## II. Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). As such, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

While Respondents argue that this jurisdiction does not extend to challenges to removal decisions (ECF No. 12 at 9-10), Petitioner at this point challenges only her continued detention, not the removal order (ECF No. 13 at 5-6). Respondents' statutory jurisdiction arguments thus fail. *Jennings v. Rodriguez*, 583 U.S. 281, 293-95 (2018) (explaining that the jurisdictional bars in 8 U.S.C. §§ 1252(b)(9) and (g) on reviewing claims "arising from" removal proceedings should not be construed so broadly as to bar jurisdiction over *all* claims by someone with a final removal order); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (distinguishing between "claims that 'arise from' removal proceedings . . . and claims that are collateral to, or independent of, the removal process"). Moreover, as noted in the Court's previous order in this case (ECF No. 3), 8 U.S.C. § 1252(g) does not prevent judicial review when a petitioner alleges that immigration officials have acted outside of their lawful discretion, beyond the limits imposed by statute, regulation, or the Constitution. *See Ibarra-Perez v.*

*United States*, 154 F.4th 989, 996 (9th Cir. 2025) (holding that Section 1252(g) only strips courts of jurisdiction to interfere with the Attorney General's lawful exercises of discretionary authority). The Court proceeds to review the Petition.

**III. Analysis**

Petitioner challenges her detention on four grounds, all arising from her pending U-Visa petition: (1) that her detention violates the APA because it is not in accordance with the nationwide administrative stay issued by the Central District of California in *Immigration Center for Women & Children ("ICWC") v. Noem*, 351 F.R.D. 324 (C.D. Cal. May 20, 2026); (2) that it violates her procedural due process rights under the Fifth Amendment's Due Process Clause; (3) that it violates her substantive due process rights under the Fifth Amendment's Due Process Clause; and (4) that it contravenes ICE policy and is thus unlawful under the *Accardi* doctrine, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). (ECF No 1 at 19-26.) Resolving these claims requires first establishing how the U-Visa program operates, what it requires of Respondents in relation to noncitizens with pending U-Visa applications who are also subject to a final removal order, and what impact the *ICWC* decision has on Petitioner's detention.

**A. The U-Visa Program and the *ICWC* Litigation**

The U-Visa program was created in 2000 as part of the reauthorization of the Violence Against Women Act (VAWA). *ICWC*, 351 F.R.D. at 351. This program "provides a path to legal status for non-citizen survivors of qualifying crimes who assist law enforcement in investigating or prosecuting those crimes." *Id.* A U-Visa may be granted to a noncitizen who (1) has "suffered substantial physical or mental abuse as a result of being a victim of" certain statutorily designated offenses, including domestic violence, sexual assault, or trafficking; (2) "possesses information concerning [that] criminal activity"; and (3) "has been helpful, is being helpful, or is likely to be helpful" to authorities investigating or prosecuting that criminal activity, provided that (4) the criminal activity violated

the laws of or took place in the United States. 8 U.S.C. §§ 1101(a)(15)(U)(i), (iii). Where the victim is a noncitizen child under the age of 16, a parent who otherwise satisfies the above requirements may apply for "derivative" protections. 8 U.S.C. § 1101(a)(15)(U)(ii).

DHS is authorized by statute to confer 10,000 U-Visas per year. 8 U.S.C. § 1184(p)(2)(A). To mitigate the effects of the resultant backlog, noncitizens with pending U-Visa petitions are afforded several interim protections and benefits. 8 C.F.R. §§ 214.14(d)(2)-(3) (establishing that petitioners whose U-Visa applications are not granted due to the annual cap are placed on a waiting list and granted "deferred action" until their application is fully processed). For one, DHS may issue administrative stays of removal orders for petitioners where it is determined that their application "sets forth a prima facie case for approval," pending final determination. 8 U.S.C. 1227(d)(1). Similarly, those with a "pending, bona fide application" for a U-Visa may also be granted employment authorization. 8 U.S.C. § 1184(p)(6).

The central protection Petitioner claims arises from ICE Directive 11005.3, issued in 2021, which established that "absent exceptional circumstances, ICE *will refrain* from taking civil enforcement action against known beneficiaries of victim-based immigration benefits *and those known to have a pending application for such benefits*." U.S. Immigr. & Customs Enf't, ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims*, at 2 (Dec. 2, 2021) (emphasis added). Under that policy, ICE "will exercise discretion to defer" from taking civil enforcement action against those with pending U-Visa applications unless and until USCIS makes a negative determination on the application or "exceptional circumstances" exist. *Id.* at 2, 8. "Civil enforcement action" is defined broadly to include both detention and removal. *Id.* at 3. Directive 11005.3 explains that if/when an applicant is detained, their status as a crime victim should be treated as a "positive discretionary factor" for civil enforcement

purposes. *Id.* at 9. The Directive also explains that the only "exceptional circumstances" that warrant setting aside the deferral policy and taking enforcement action against (i.e., detaining) a U-Visa applicant are where the applicant poses (a) "national security concerns," or (b) "an articulable risk of danger, violence, or physical harm to any person." *Id.* at 3.

ICE's policy changed in January 2025, when it issued guidance, "effective immediately," that explicitly rescinded Directive 11005.3 and imposed a policy of enforcement against those with pending U-Visa applications. *See* U.S. Immigr. & Customs Enf't, ICE Policy No. 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance"). The 2025 Guidance was challenged in the Central District of California by several sets of individuals who claimed that the it was "contrary to protections afforded them by Congress and contrary to congressional intent," as well as "in violation of the Administrative Procedure Act and the *Accardi* doctrine." *ICWC*, 351 F.R.D. at 348-49.

The present petition turns on two key aspects of the *ICWC* decision. First, the *ICWC* court provisionally certified two nationwide classes that Petitioner claims to fall within: (1) the Pending Petition Class, covering "[a]ll individuals with pending principal or derivative U visa petitions . . . who ICE detains or seeks to detain for civil immigration enforcement," and (2) the Stay of Removal Class, covering "[a]ll individuals with a pending U . . . visa petition who, since January 30, 2025, have been, are, or will be detained by ICE and who request or requested a stay of a final removal order prior to enforcement of that removal order." *Id.* at 396. The Pending Petition Class challenged the 2025 Guidance as violating the APA. *Id.* at 367. The Stay of Removal Class argued that the new policy of denying U-Visa petitioners' requests for stays of removal without first determining whether their petitions presented prima facie cases for approval violated the APA and federal immigration law. *Id.* In certifying these classes, the court explicitly

noted that "the classes are not geographically limited: they encompass all persons who match the parameters regardless of their location." *Id.* at 396.

Second, the *ICWC* decision granted an administrative stay of the 2025 Guidance and reinstated the prior ICE Directive 11005.3 as to all class members. *Id.* at 397. The court concluded that the plaintiffs could likely show that the 2025 Guidance is arbitrary and capricious because it "was issued without a reasoned explanation for disregarding the reasons underlying [prior ICE directives] and apparently failed to consider important aspects of the problems that honoring victim-based protections was meant to address," including the serious reliance interests of "noncitizens who applied for the protections that Congress and the Defendants promised." *Id.* at 383-85. The court also concluded that the plaintiffs could likely show that the 2025 Guidance "is contrary to law because it does not protect [U-Visa] petitioners from enforcement," as required by VAWA and various provisions of federal immigration law. *Id.* at 385. The court further concluded that the plaintiffs were likely to show that the 2025 Guidance's policy of removing U-Visa petitioners who requested an administrative stay without first making a prima facie adjudication on their application was also contrary to law. *Id.* at 391-92. For these reasons, the court stayed the 2025 Guidance and reinstated ICE Directive 11005.3 nationwide. *Id.* at 396-97 ("[B]ecause the classes are nationwide, the stays should also be nationwide.").

**B. Petitioner's Continued Detention Violates the Operative ICE Directive 11005.3 and the *Accardi* Doctrine.**

Petitioner's primary argument, laid out in her first cause of action, is that because the *ICWC* order reinstated ICE Directive 11005.3, which asserts a policy of deferring action against noncitizens with pending U-Visa applications, Respondents' decision to continue detaining her is arbitrary and capricious and contrary to law under that policy, violating the APA. (ECF No. 1 at 19-20.) *See* 5 U.S.C. § 706(2)(A) (authorizing courts reviewing agency actions to "hold unlawful

and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Relatedly, in her fourth cause of action, she asserts that her continued detention demonstrates that Respondents are noncompliant with their own policies—namely, Directive 11005.3—in violation of the *Accardi* doctrine. (ECF No. 1 at 25-26.) Respondents counter that the *ICWC* decision has no cross-district force and is thus non-binding here (ECF No. 12 at 3-4), and that even if it does govern, their actions are consistent with Directive 11005.3 because Petitioner's DUI arrest is an "exceptional circumstance" supporting enforcement action (*id.* at 4-5).

First, the Court agrees with Petitioner that *ICWC* is operative in this case. The effect of that decision is clear: with its order, the *ICWC* court "**STAY[ED]** the 2025 Guidance, including its rescission of prior policies," as applied to all members of the provisionally certified nationwide Pending Petition Class. 351 F.R.D. at 397 (emphasis in original). As the order states, the classes it provisionally certified "are not geographically limited: they encompass all persons who match the parameters regardless of location." *Id.* at 396. That includes Petitioner, as an "individual[] with [a] pending principal or derivative U visa petition[] . . . who ICE detains or seeks to detain for civil immigration enforcement." *Id.* at 396. Although Respondents conceded at the hearing on the present petition that Petitioner would be included in those classes as defined in the *ICWC* order, they argue (ECF 12 at 9) that *ICWC* has no effect in this case because that would functionally provide a form of nationwide class relief inconsistent with the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025) (holding that so-called "universal injunctions" issued by district courts "likely exceed the equitable authority that Congress has granted to federal courts"). But the *CASA* decision explicitly disclaimed that it was addressing class actions certified under Federal Rule of Civil Procedure 23, *id.* at

849-50, or cases in which federal agency actions are set aside under the APA, *id.* at 847 n.10; *Nat'l TPS Alliance v. Noem*, 166 F.4th 739, 759 (9th Cir. 2026) (identifying this distinction). To be clear, Petitioner is not entitled to every form of relief ordered in *ICWC*; she does not contest Respondents point that "[t]he only coercive (injunctive) relief in the order—the two re-entry injunctions—runs solely to the three named plaintiffs" in *ICWC*, not to Petitioner. (ECF No. 12 at 3.) Petitioner asserts only that the reinstatement of Directive 11005.3 applies to her. (ECF No. 13 at 3.) The Court agrees that *ICWC* is applicable in at least that limited sense. *See, e.g.*, *Osorio v. Blanche*, No. 2:26-cv-00588-GMN-MDC, 2026 WL 1481555, at *1 n.5 (D. Nev. May 27, 2026) (identifying that *ICWC*'s "stay of DHS's 2025 guidance applies to all class members regardless of geographic location"), *Osorio Gonzalez v. Wesling*, No. 26-cv-231-JJM-AEM, 2026 WL 1765871, at *9 (D.R.I. June 19, 2026) (recognizing the nationwide scope of *ICWC*'s classes); *Villeda Mejia v. Baltazar*, No. 26-cv-02084-RMR, 2026 WL 2224656, at *2 (D. Colo. Aug. 3, 2026) (same).

Having established that Directive 11005.3 governs, pursuant to the *ICWC* decision's nationwide administrative stay for class members like Petitioner, the question becomes whether Petitioner's continued detention violates the policies contained therein. According to Respondents, under Directive 11005.3, "[a] pending victim-based petition is [] itself a basis for deferral[.] . . . ICE's compliant course as to a class member is therefore generally to defer both detention and removal, to coordinate with USCIS for an expedited determination, and to lift deferral only on a negative USCIS determination or documented exceptional circumstances." (ECF No. 12 at 4-5.) In their own words, then, where, as here, the subject U-Visa application still awaits a USCIS determination, "[d]etention or proceedings require case-specific 'exceptional circumstances.'" (*Id.* at 5.) Indeed, at the hearing, Respondents conceded that this policy requires ICE to defer from taking civil enforcement action, including detention, against those with pending

U-Visa applications unless extraordinary circumstances are present or USCIS has made a negative determination on the application. Respondents further conceded—and the record does not reflect otherwise—that ICE has not made a determination that extraordinary circumstances exist in this case to justify setting aside the deferral policy as to Petitioner, and that USCIS has not issued a negative determination as to her application.

There is thus no basis for ICE's decision to take enforcement action against Petitioner in this case. By detaining Petitioner despite her pending U-Visa application, Respondents have violated Directive 11005.3, operative in the wake of *ICWC*—dated May 20, 2026—as applied to class members like Petitioner. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). Moreover, "[p]ursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures." *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990). This doctrine applies with equal force in the immigration context. *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004) (recognizing that immigration agencies may be held accountable for violations of their own internal policies); *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985) (same). The Court thus concludes that Petitioner's detention is unlawful under the APA and the *Accardi* doctrine.

Petitioner also argues that her continued detention violates the Fifth Amendment's Due Process Clause. (ECF No. 1 at 20-25.) For example, she brings a procedural due process claim, asserting that detention infringes upon her protected liberty interest in her pending U-Visa application without affording her the statutorily imposed procedures for processing that application. (*Id.* at 20-23.) The Court appreciates, particularly in light of the disclosure at the hearing that because of Petitioner's detention, she has missed appointments required for

USCIS to process her U-Visa application, that "[t]here is a cognizable liberty interest in noncitizens being free from undue interference while undertaking the agency-mandated processes of filing their immigration benefit applications." *Osorio Gonzalez*, 2026 WL 1765871, at *6. But given that this disclosure was made for the first time at the hearing, such that Respondents did not have an opportunity to respond it, and having established that relief is warranted based on Petitioner's statutory and administrative claims, the Court need not address the additional grounds for release raised in the petition. *See, e.g.*, *Constantinovici v. Bondi*, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on one claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

**IV. Conclusion**

It is therefore ordered that Petitioner's petition (ECF No. 1) is GRANTED.

It is further ordered that Respondents must RELEASE Petitioner from detention on personal recognizance on September 24, 2026, between the hours of 10am and 2pm. Counsel for Petitioner (or their designee/agent) will be permitted to wait in the public areas of the detention center during the release window.

It is further ordered that as long as ICE Directive 11005.3 remains in effect, pursuant to the preliminary injunction entered as to Petitioner in the *ICWC* decision, pending a negative determination on Petitioner's pending U-Visa application or a determination that Petitioner presents an extraordinary circumstance under Directive 11005.3, Respondents are ENJOINED from taking civil enforcement action against Petitioner.

It is further ordered that the parties must FILE a Joint Status Report no later than September 30, 2026, confirming Respondents' compliance with the Court's order.

Dated this 23rd day of September 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE